IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Case No. 1:26-cv-05926

CHRISTOPHER SADOWSKI,

Plaintiff,

v.

INDEPENDENTSENTINEL.COM, LLC and
MAUREEN A DOWLING,

Defendants.

---

## COMPLAINT

Plaintiff Christopher Sadowski ("Plaintiff") sues defendants IndependentSentinel.com, LLC ("IndependentSentinel") and Maureen A Dowling ("Dowling") (collectively, the "Defendants"), and alleges as follows:

## THE PARTIES

1. Plaintiff is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey.

2. IndependentSentinel is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business located at 30 N Gould Street, Suite R, Sheridan, WY 82801. Defendant's agent for service of process is Registered Agents Inc, 30 N Gould Street, Suite R, Sheridan, WY 82801.

3. Dowling is an individual who is a citizen of the state of New York residing at 27 Jefferson Landing Circle, Port Jefferson, NY 11777.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendants because they have maintained sufficient minimum contacts with this State such that the exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

6. Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendants or their agents reside or may be found in this district. "A defendant 'may be found' wherever that person is amenable to personal jurisdiction." Cavu Releasing, LLC. v. Fries, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005). In other words, "[v]enue is proper in his District because the defendants are subject to personal jurisdiction in this District." Noble v. Crazetees.com, 2015 U.S. Dist. LEXIS 130508, at *9 (S.D.N.Y. July 16, 2015).

## FACTS

### I. Plaintiff's Business and History

7. Plaintiff is an award-winning photojournalist and is widely published in some of the world's most important newspapers and magazines, including but not limited to, the *New York Post, Daily Mail Online, Reader's Digest, USA Today, New York Times,* Fox News, CBS News, NBC News, *Boston Globe, Boston Herald, Los Angeles Times, Newsweek Magazine*, and *People Magazine*.

8. Throughout his career, Plaintiff has been self-employed as a professional photographer who specializes in photo-documenting ordinary life and the human condition.

9. Plaintiff travels throughout the New York, New Jersey and Connecticut tri-state area taking photographs that tell a story about tragedy, hope, calamity, joy, discord and renewal.

10. Using state-of-the-art equipment, Plaintiff creates high-end photography licensed by some of the top publishers in this country. When commissioned for a job, Plaintiff spends countless hours capturing hundreds of photographs and then processing those photographs to ensure they meet customers' requirements.

11. Plaintiff maintains a commercial website (http://www.csnyphoto.com) which describes the photography services offered by Plaintiff, hosts a sample portfolio of photographs taken by Plaintiff, and invites prospective customers to contact Plaintiff to arrange for a professional photo shoot.

12. Plaintiff owns the photographs and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, one-time license for use of any particular photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that his customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II. The Works at Issue in this Lawsuit

### *The First Photograph*

13. Plaintiff created a professional photograph of an iAero Airways flight on the tarmac at Westchester County Airport titled "042222migrantflight2CS" (the "First Photograph").

### *The Second Photograph*

14. Plaintiff created a professional photograph of suspect Vincent Pinkey being led away by cops in handcuffs titled "120221stabbingspree1CS" (the "Second

Photograph”).

15. The First Photograph and Second Photograph are collectively referred to herein as the “Work.”

16. Attached hereto as **Exhibit “A”** is a spreadsheet which identifies each photograph comprising the Work, the corresponding US Copyright Office registration number for such photograph, and one or more screenshots of the alleged infringement of such photograph.

17. Each photograph comprising the Work was registered by Plaintiff with the Register of Copyrights and was assigned a registration number thereby. True and correct copies of the Certificates of Registration pertaining to the Work are attached hereto as **Exhibit “B.”**

18. Plaintiff is the owner of the Work and has remained the owner at all times material hereto. The Work was licensed to the *New York Post* and published alongside articles titled “White House continues clandestine migrant flights to NYC area” and “Gang Member arrested in Columbia student Davide Giri’s fatal stabbing, attack on tourist.” Immediately below each photograph comprising the Work appearing in the foregoing articles, Plaintiff’s name is credited as the author/creator of each photograph comprising the Work, an attribution known in the industry as a “gutter credit”:

The flights resumed earlier this month after a Post exposé led to their suspension last year.

On Friday, the Post watched as a group of migrants disembarked from an iAero Airways flight from Jacksonville, Fla. that landed at Westchester County Airport at 9:48 p.m.



An iAero Airways flight that was carrying immigrants from the Mexican border on the tarmac at Westchester County Airport in White Plains, NY on April 22, 2022.
Christopher Sadowski

The passengers were placed on two white charter buses from J&F Tours. The Post followed one of the buses as it drove to destinations in the Bronx and Yonkers.

The victim needed 20 staples to close a gash on the back of his head and another 25 stitches for a large cut from his right eye to the right ear, according to the complaint.

Pinkney served three years of a four-year prison stint, according to state Department of Corrections records.



Vincent Pinkney is led away by cops after the stabbings.
Christopher Sadowski

Cops are now investigating whether a third stabbing attack inside Morningside Park 24 hours earlier is linked to the recent frenzy, according to sources.

In that attack, a man was stabbed in the neck just after midnight on Wednesday and the suspect – who sources say matches the description of the latest perp – fled the scene.

## III. Defendants' Unlawful Activities

19. IndependentSentinel offers an aggregate news platform that provides commentary on current events and issues.

20. Dowling owns and operates IndependentSentinel and has published articles and

was a copy editor for *This Week Magazine*. Dowling has exclusive control over the business activities of IndependentSentinel, including but not limited to the infringing activities that are subject of this lawsuit.

21. Upon information and belief, Dowling utilizes her Facebook page to promote and/or market the business activities of IndependentSentinel (at https://www.facebook.com/maureen.dowling.923/).

22. Defendants advertise/market their business through their website (https://www.independentsentinel.com/), social media (e.g., https://x.com/indiesentinel and https://truthsocial.com/@independentsentinel), and other forms of advertising.

23. On April 15, 2025 (after the above-referenced copyright registration of the First Photograph), Defendants displayed and/or published the First Photograph on their website, webpage, social media, and/or printed media as a means of advertising, promoting, and/or marketing their business.

24. On December 3, 2021 (within the 3-month window between first publication and Plaintiff's above-referenced copyright registration of the Second Photograph), Defendants displayed and/or published the Second Photograph on their website, webpage, social media, and/or printed media as a means of advertising, promoting, and/or marketing their business.

25. In publishing the Work online without gutter credit, Defendants removed or altered Plaintiff's copyright management information and distributed the Work knowing that Plaintiff's copyright management information has been removed or altered. The remaining details of the Work, however, unequivocally show the photographs to be the same.

26. Tue and correct copies of screenshots of Defendants' website, webpage, social media, and/or printed media, displaying the copyrighted Work, are included in Exhibit "A" hereto.

27. Defendants are not and have never been licensed to use or display the Work. Defendants never contacted Plaintiff to seek permission to use the Work in connection with Defendants' website, webpage, social media, and/or printed media – even though the Work that was copied is clearly professional photography that would put Defendants on notice that the Work was not intended for public use.

28. Defendants utilized the Work for commercial use.

29. Upon information and belief, Defendants located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for their own commercial use.

30. Through his ongoing diligent efforts to identify unauthorized use of his photographs, Plaintiff discovered Defendants' unauthorized use/display of the First Photograph on October 2, 2025 and discovered Defendants' unauthorized use/display of the Second Photograph on April 3, 2026. Following Plaintiff's discovery of the unauthorized use/display of the First Photograph, Plaintiff notified Defendants in writing of such unauthorized use.

31. All conditions precedent to this action have been performed or have been waived.

**COUNT I – COPYRIGHT INFRINGEMENT**
**(IndependentSentinel)**

32. Plaintiff re-alleges and incorporates paragraphs 1 through 31 as set forth above.

33. Each photograph comprising the Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United

States copyright laws (17 U.S.C. § 101 *et seq.*).

34. Plaintiff owns a valid copyright in each photograph comprising the Work, having registered the Work with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim(s) herein.

35. As a result of Plaintiff's reproduction, distribution, and public display of the Work, IndependentSentinel had access to the Work prior to its own reproduction, distribution, and public display of the Work on IndependentSentinel's website, webpage, social media, and/or printed media.

36. IndependentSentinel reproduced, distributed, displayed, and/or publicly displayed the Work without authorization from Plaintiff.

37. By its actions, IndependentSentinel infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501. IndependentSentinel's infringement was either direct, vicarious, and/or contributory.

38. IndependentSentinel infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, IndependentSentinel itself utilizes a copyright disclaimer on its website ("© 2011 www.independentsentinel.com. All Rights Reserved."), indicating that IndependentSentinel understands the importance of copyright protection/intellectual property rights and is actually representing that it owns each of the photographs published on its website. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the

fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). IndependentSentinel clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

39. Plaintiff has been damaged as a direct and proximate result of IndependentSentinel's infringement.

40. Plaintiff is entitled to recover his actual damages resulting from IndependentSentinel's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of IndependentSentinel's profits from infringement of the Work, which amounts shall be proven at trial.

41. Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

42. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover his costs and attorneys' fees as a result of IndependentSentinel's conduct.

43. IndependentSentinel's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against IndependentSentinel as follows:

a. A declaration that IndependentSentinel has infringed Plaintiff's copyrights in the Work;
b. A declaration that such infringement is willful;
c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for each photograph comprising the Work;
d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;
e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;
f. Permanently enjoining IndependentSentinel, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with IndependentSentinel, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and
g. For such other relief as the Court deems just and proper.

**COUNT II – VICARIOUS COPYRIGHT INFRINGEMENT**
**(Dowling)**

44. Plaintiff re-alleges and incorporates paragraphs 1 through 31 as set forth above.

45. As evidenced above, IndependentSentinel infringed and violated Plaintiff's

exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501.

46. As IndependentSentinel's author/editor/owner/operator responsible for the subject webpages, Dowling has the right and ability to control the infringing acts of IndependentSentinel yet declined or failed to stop IndependentSentinel from engaging in its infringing activity. Indeed, IndependentSentinel could not have published the subject webpages without the approval and consent of its author/editor/owner/operator (Dowling).

47. Upon information and belief, Dowling obtained a direct financial benefit from IndependentSentinel's infringing activities.

48. As a direct and proximate result of Dowling's vicarious copyright infringement, Plaintiff has been damaged. "In the context of copyright law, vicarious liability extends beyond an employer/employee relationship to cases in which a defendant has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Oppenheimer v. Scarafile, Civil Action No. 2:19-cv-3590-BHH, 2020 U.S. Dist. LEXIS 213742, at *11 (D.S.C. Nov. 16, 2020) (quotation marks and citations omitted). "In order to establish vicarious liability, a copyright owner must demonstrate that the entity to be held so liable: (1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." Id. (citing Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 513 (4th Cir. 2002)). "Under a theory of vicarious liability, a defendant who 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities' is similarly liable." CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 550 (4th Cir. 2004) (quoting Gershwin Publ'g Corp., 443 F.2d at 1162). See also, e.g. Broad. Music, Inc. v. Evie's Tavern Ellention, Inc., No.

8:11-cv-2056-T-17TBM, 2011 U.S. Dist. LEXIS 137720, at *5-8 (M.D. Fla. Nov. 30, 2011) ("Because Defendants, Evie's and Evanoff, benefited from the performances and admitted they owned, controlled, managed, and operated Evie's, they are vicariously liable for the infringement."); LaTele TV C.A. v. Telemundo Communs. Grp., LLC, No. 12-22539-CIV-ROSENBAUM, 2013 U.S. Dist. LEXIS 43488, at *32 (S.D. Fla. Mar. 26, 2013) ("[P]leading facts sufficient to pierce the corporate veil is not required in order to state a cause of action for vicarious copyright infringement.").

49. Dowling's infringement was willful. As an author/editor/owner/operator of an aggregate news media website, Dowling clearly understands that professional photography is generally paid for and cannot simply be copied from the internet. Plaintiff has been damaged as a direct and proximate result of Dowling's infringement.

**WHEREFORE**, Plaintiff demands judgment against Dowling as follows:

a. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages each photograph comprising the Work;
b. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. §§ 505 and 1203(b)(5);
c. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;
d. Permanently enjoining Dowling, her employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Dowling, from directly or indirectly further violating Plaintiff's copyrights by further displaying or distributing the Work with his copyright management

information removed; and

e. For such other relief as the Court deems just and proper.

Dated: September 24, 2026.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza_
Daniel DeSouza, Esq.